UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN ROBBINS and MISTY
ROBBINS,

    Plaintiffs,

v.

MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.
(MERS), et al.,

    Defendants.
_____/

File No. 1:09-CV-295

HON. ROBERT HOLMES BELL

## OPINION

This matter is before the Court on a motion to dismiss for failure to state a claim, or in the alternative, for summary judgment, filed by Defendants Mortgage Electronic Registration Systems, Inc. (MERS), Deutsche Bank National Trust Company for FFML 2006-FFL3 ("Deutsche Bank"), and Americas Servicing Company (ASC) (collectively, "Mortgage Defendants"). (Dkt. No. 7.) Defendant Transnation Title Insurance Company ("Transnation") filed a concurrence in the motion.[1] (Dkt. No. 14.) Defendant Crosstown

---

[1] Transnation concurs in the motion by Mortgage Defendants as to Counts One, Two, Three, Five, Six, Seven, Eleven, and Twelve.

Appraisals ("Crosstown") has also filed a concurrence in the motion[2] and a separate motion to dismiss. (Dkt. Nos. 13, 15.) Plaintiffs have not responded to any of the motions. For the reasons that follow, the Court will grant the motions in part and deny them in part.

I.

According to their complaint, Plaintiffs Steven and Misty Robbins purchased a home in July 2006 that is now subject to a foreclosure action. Plaintiffs allege that, before purchasing their home, they were told by Defendant Treadstone Mortgage ("Treadstone") that the interest rate on their mortgage would be 7.5%. Plaintiff Steven Robbins appeared at the closing without his wife and was told by Defendant Treadstone that his wife's absence was "no big deal," and by Defendant Jeanine DeLaat, the escrow officer and a representative of Transnation, the title insurance company, that "They would take care of it[.]" Plaintiff Robbins noticed at the closing that the interest rate would be 9.6%, but Treadstone informed Plaintiff that he would be able to refinance and get a lower rate the next year. One of the Defendants allegedly signed Misty Robbins's name on the mortgage documents and the signature was notarized by Defendant Kathi Six. Several months after the closing, Plaintiffs learned that Defendant First Franklin had sold its interest in the mortgage to Defendant ASC. Plaintiffs apparently understood that the taxes and insurance on the home would be covered by the mortgage payments, but Plaintiffs received a cancellation notice in July 2007 from

---

[2]Crosstown concurs in the motion by Mortgage Defendants as to Counts One, Three, Five, Six, Seven, Eleven, and Twelve.

their insurance company for failure to pay premiums. While investigating the status of tax payments on the home, Plaintiffs discovered from the county tax assessor that their home had a lower value than what they paid for it. However, Plaintiffs were unable to find any appraisal papers in their mortgage documentation. Plaintiffs also discovered Misty Robbins's signature on the mortgage papers, which they believed to be a forgery. Plaintiffs contacted Defendant ASC, the mortgage servicer, to find out who owned the note. ASC would not provide that information and told Plaintiffs they could only deal with ASC. Plaintiffs discovered through county records that Defendant MERS was listed as the nominee on the mortgage. When Plaintiffs telephoned Defendant MERS to find out who owned the mortgage, a representative hung up on them. Plaintiffs allege that they continued making payments on their mortgage until December 2007. Defendant ASC told them that they could not receive help until they were at least three payments behind. Three months later, Plaintiffs were unable to refinance their mortgage and ASC offered them a loan modification agreement. In October 2008, after a series of "altered agreements" with ASC, Defendant ASC initiated foreclosure proceedings. Plaintiffs filed their complaint in March 2009 alleging thirteen counts of violation of state and federal law in connection with their home purchase, the mortgage, and the foreclosure action.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to

judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006). In order to defeat a summary judgment motion, the nonmoving party "must show sufficient evidence to create a genuine issue of material fact." *Prebilich-Holland v. Gaylord Ent. Co.*, 297 F.3d 438, 442 (6th Cir. 2002) (citing *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990)). The nonmoving party must provide more than a scintilla of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In other words, the nonmoving party must present evidence sufficient to permit a reasonable jury to find in its favor. *Id.* Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In evaluating a motion to dismiss, Rule 8 of the Federal Rules of Civil Procedure provides the standard for judging whether Plaintiff has stated a cognizable claim. Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, to survive a motion to dismiss, a complaint need not provide detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555-56 (2007). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

**A. Count One - Violation of RESPA**

In Count One, Plaintiffs allege that Defendants violated the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 e*t seq.*, by accepting "fees, kickbacks or other things of value from the other Defendants pursuant to an agreement . . . incident to or part of a real estate settlement service" and by "[g]iving or accepting a portion . . . of charges made or received for the rendering of real estate settlement services . . . ." (Dkt. No. 1, Compl. ¶ 52.) There is a one-year statute of limitations with respect to RESPA claims arising

5

under section 2607, accruing "from the date of the occurrence of the violation." 12 U.S.C. § 2614. Plaintiffs' claim appears to be based on the mortgage loan that was issued in connection with the purchase of their home in July 2006. According to the complaint, the purchase transaction closed on July 28, 2006. (Compl. ¶¶ 19, 21.) Plaintiff's complaint was filed in March 2009, over two years after the closing. Thus, accepting the facts in Plaintiffs' complaint as true, Plaintiffs' RESPA claim is time-barred, and it will be dismissed against all Defendants.

**B. Count Two - Violation of MBLSA**

Plaintiffs allege that Defendants violated the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act (MBLSA), Mich. Comp. Laws § 445.1651 *et seq.* The latter statute does not apply to a "depository financial institution whether or not the depository financial institution is acting in a capacity of a trustee or fiduciary." Mich. Comp. Laws. § 445.1675(a). Mortgage Defendants indicate, with supporting documentation, that America's Servicing Company (ASC) is an assumed name of Wells Fargo Home Mortgage, Inc., an entity that merged into Wells Fargo Bank, N.A. in 2004. Furthermore, Mortgage Defendants indicate that Deutsche Bank is a state-chartered bank. Thus, Defendants argue that neither ASC nor Deutsche Bank are subject to claims under the MBLSA. Plaintiffs offer no evidence or argument to dispute this contention. Thus, the Court will grant summary judgment in favor of ASC and Deutsche Bank as to Count Two.

With respect to Defendant MERS, Plaintiffs' complaint asserts:

6

> It is believed that MERS simply holds mortgage liens in a nominee capacity . . . . MERS has no interest in the notes secured by mortgages or the mortgage servicing rights related thereto . . . MERS has no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans . . . . MERS is attempting to bring the foreclosure action against Plaintiffs and has no standing to do so.

(Compl. ¶ 11.) Defendant MERS contends that the foregoing allegations constitute admissions that MERS is not a mortgage servicer and is therefore not subject to an MBLSA claim. However, to the extent that these allegations constitute admissions they are, at best, admissions with respect to MERS's status at the time of the filing of the complaint and/or the foreclosure action. They do not address MERS's status during the entire time of the underlying transactions in this case. *Cf. Pistole v. Mortgage Elec. Registration Sys., Inc.*, No. 07-12228, 2008 WL 2566366, at *2 (E.D. Mich. June 24, 2008) (dismissing an MBLSA claim where the plaintiff asserted in an affidavit that defendant MERS "is not and has never been" a mortgage servicer). Neither Plaintiff nor Defendant MERS contends that MERS "is not and has never been" a mortgage servicer subject to the requirements of the MBLSA. Thus, the Court will deny Mortgage Defendants' motion to dismiss the MBLSA claim against MERS.

Finally, the Court notes that Mortgage Defendants' evidence and arguments are not applicable to Defendant Transnation; thus, Transnation's motion in concurrence with respect to Count Two will be denied.[3]

---

[3] Defendant Crosstown also argues that the "Mortgage Act" does not provide for a private cause of action, apparently referring to the Consumer Mortgage Protection Act, Mich. Comp. Laws § 445.1631 *et seq*. However, the complaint makes no reference to that Act.

**C. Count Three - Breach of Fiduciary Duty**

Plaintiffs' third count alleges breach of fiduciary duty. Plaintiffs allege that Defendants owed certain duties to Plaintiffs because Defendants were "agents" of Plaintiffs with respect to obtaining the mortgage loan and performing services for Plaintiffs in connection with the mortgage and home purchase. Mortgage Defendants argue that they were not agents because Plaintiffs did not have the right to control the conduct of Defendants, and because there is no allegation that any of Defendants' actions bound Plaintiffs to any third party. *See Meretta v. Peach*, 491 N.W.2d 278, 280 (Mich. Ct. App. 1992) ("An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account. The test of whether an agency has been created is whether the principal has a right to control the actions of the agent.") (citations omitted). Plaintiffs have not responded and offer no evidence to raise a genuine issue of material fact with respect to whether an agency relationship existed between Plaintiffs and Mortgage Defendants, Crosstown, or Transnation. Thus, the Court will grant summary judgment in favor Mortgage Defendants and Defendants Crosstown and Transnation.

**D. Count Four - Violation of the Fair Debt Collection Practices Act**

Plaintiffs allege in Count Four that Mortgage Defendants violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692f and 1692e, by using "unfair and unconscionable" means to collect on the mortgage loan, by threatening to foreclose on their home even though Defendants have no present right of possession, and by misrepresenting

8

the amount and status of Plaintiffs' debt. Mortgage Defendants contend, with supporting documentation, that Defendant Deutsche Bank is the holder of the mortgage and is therefore not a debt collector subject to the FDCPA. According to authority cited by Mortgage Defendants, "A bank that is 'a creditor is not a debt collector for the purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts.'" *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (quoting *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003)). However, the opinion in *Montgomery* cites 15 U.S.C. § 1692a(6)(F) as the basis for its holding. According to that section, a debt collector does not include:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

The court in *Montgomery* relied upon subsections (ii) and (iii) to find that a bank was not a debt collector. 346 F.3d at 699. Defendant does not indicate which subsection is applicable to it; thus, the motion to dismiss Count Four will be denied with respect to Defendant Deutsche Bank.

With respect to ASC, Mortgage Defendants contend that ASC is a mortgage servicing company. Defendants argue that mortgage servicing companies are not debt collectors and are therefore exempt from liability under the FDCPA, citing *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985), *modified on other grounds*, 761 F.2d 237 (5th Cir. 1985);

9

*v. Wells Fargo Home Mortgage, Inc.*, 326 F. Supp. 2d 709, 717 (E.D. Va. 2003). Contrary to Defendants' suggestions, the authority cited by Defendants does not hold that mortgage servicing companies are categorically exempt from liability under the FDCPA. It holds that a mortgage servicing company is exempt *if* the mortgage was not in default at the time that it began servicing the loan. *Perry*, 752 F.3d at 1208; *Scott*, 326 F. Supp. 2d at 717. Defendants do not contend that the mortgage was not in default at the time that ASC began servicing the loan. Thus, Mortgage Defendants' motion to dismiss Count Four will be denied with respect to ASC.

With respect to MERS, Mortgage Defendants argue that the complaint does not state a FDCPA claim because there is no allegation in the complaint that MERS is a debt collector or engaged in any activities that define a debt collector. *See* 15 U.S.C. § 1692a(6) (defining a debt collector as "any person who uses any instrumentality of interstate commerce . . . in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect . . . debts owed . . . another."); 15 U.S.C. § 1692f (setting forth prohibitions applicable to debt collectors). The complaint alleges that Defendants (collectively) have violated various provision of the FDCPA, but does not allege that MERS is a debt collector, that MERS engaged in any actions of a debt collector, or that MERS in particular violated any provision of the FDCPA. The only factual allegation in the complaint with respect to MERS is that Plaintiffs contacted MERS to find out who owned the mortgage, but an employee of MERS allegedly hung up on them. That is not sufficient to

state an FDCPA claim against MERS. The Court also notes that Plaintiffs have not filed a motion to amend their complaint or otherwise responded to Defendants' motion. For the foregoing reasons, Plaintiffs' claim against MERS in Count Four will be dismissed for failure to state a claim.

**E. Count Five - Civil Conspiracy**

In Count Five, Plaintiffs allege that Defendants "acted in concert" to "induce Plaintiffs to enter into this mortgage transaction which had little or no benefit to them . . . ." (Compl. ¶¶ 72, 73.) The complaint further alleges that this "civil conspiracy resulted in damaging the Plaintiffs . . . ." (*Id.* at ¶ 74.) This count does not a state a separate claim because conspiracy is not a separate tort. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) ("'[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort.'") (quoting *Early Detection Ctr., PC v. N.Y. Life Ins. Co.*, 157 Mich. App. 618, 632, 403 N.W.2d 930 (Mich. Ct. App. 1986)). The Court cannot discern from the allegations of the complaint any actionable tort by Mortgage Defendants or by Defendants Crosstown or Transnation that forms the basis for Plaintiffs' civil conspiracy claim. Thus, Count Five will be dismissed for failure to state a claim.

**F. Count Six - Innocent Misrepresentation**

Plaintiffs allege in their sixth count that Defendants knowingly made material misrepresentations regarding "the specific terms of the mortgage transaction such as a fixed

11

interest rate and a lower mortgage payment and that [Defendant] would be required to pay a substantial amount to cancel the transaction." (Compl. ¶ 76.) While this claim is pled against all Defendants, there is no specific allegation of any misrepresentation made by Mortgage Defendants or Defendant Transnation. Moreover, misrepresentations "'must relate to a past or existing fact and not be promissory in nature.'" *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 157 (Mich. Ct. App. 2004) (quoting *Alibri v. Detroit/Wayne County Stadium Auth.*, 254 Mich. App. 545, 564, 658 N.W.2d 167 (Mich. Ct. App. 2002), *rev'd on other grounds*, 683 N.W.2d 147 (Mich. 2004)). The misrepresentations identified by Plaintiffs in Count Six appear to relate to the terms of the mortgage, including actions that the mortgage-holders might take to enforce those terms. In other words, the alleged misrepresentations were "promissory in nature" or were forward-looking rather than representations of existing facts. Plaintiffs offer no additional facts or argument to suggest otherwise. Thus, Plaintiffs' claim in Count Six will be dismissed as against Mortgage Defendants and Defendant Transnation for failure to state a claim.

With respect to Defendant Crosstown, Plaintiffs allege that Crosstown misrepresented an existing fact, *i.e.* the value of the home. (Compl. ¶¶ 7, 37-39.) Thus, the arguments raised by Mortgage Defendants are not applicable to Crosstown. However, Crosstown argues that Plaintiffs admitted in the allegations of their complaint that they did not rely upon the appraisal provided by Crosstown in making the decision to purchase their home. The complaint alleges that Plaintiffs began investigating the terms of their mortgage in July 2007

and "noticed . . . that no appraisal was available in all of the paperwork they had received. Plaintiffs searched for Defendant Crosstown Appraisal[']s information, but were unable to do so." (Compl. ¶ 39.) To establish a claim of fraud or innocent misrepresentation, Plaintiffs must show that they relied upon the false statement. *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 36-37 (Mich. Ct. App. 1998), *modified on other grounds*, *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546 (Mich. Ct. App. 1999). Plaintiffs cannot claim that they relied upon an appraisal that they never received. Plaintiffs offer no other facts or evidence indicating that they relied upon any misrepresentations by Crosstown; thus, the Court will grant Defendant Crosstown's motion for summary judgment as to Count Six.

### G. Count Seven - Fraud

Plaintiffs' seventh claim is that Defendants committed fraud in misrepresenting "material information regarding the mortgage transaction," including "promising Plaintiffs mortgage terms that they had no intention of providing, forging signatures on official documents pertaining to the mortgage . . . inflating the value of the home secured by the mortgage . . ., and creating a false address to obtain a higher SEV and Taxable value . . . ." (Compl. ¶ 83.) Generally, a fraud claim should "allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007)). In other words, the pleader must provide

13

"sufficient detail . . . to allow the defendant to prepare a responsive pleading . . . ." *Id.* Plaintiffs' claim is directed towards Defendants generally. Plaintiffs have not pled with any particularity a claim of fraud against Mortgage Defendants or Defendant Transnation. No fraudulent statements are identified in any detail as to any of the Mortgage Defendants or Defendant Transnation. Thus, Plaintiffs fail to state a fraud claim against these Defendants.

The arguments raised by Mortgage Defendants are not applicable to Defendant Crosstown; however, the Court will grant Crosstown's motion for summary judgment as to Count Seven for the reasons stated in Section II.F, *supra*.

**H. Count Eight - Wrongful Foreclosure**

Count Eight alleges that Defendants MERS and Deutsche Bank do not have a legal right to initiate the foreclosure action based on the factual allegations in the complaint. (Compl. ¶ 89.) Defendants argue that the allegations of the complaint themselves support the propriety of the foreclosure action, because Plaintiffs allege that they have stopped making payments on their mortgage. (Compl. ¶ 44.) Plaintiffs have not responded or offered any evidence to establish a genuine issue of material fact in support of their wrongful foreclosure claim. Thus, the Court will grant Mortgage Defendants' motion for summary judgment as to Count Eight.

**I. Count Nine - Slander of Title**

Plaintiffs' complaint alleges that Defendants ASC, Deutsche Bank, and MERS have filed a "Notice of Trustee Sale which has impaired the [Plaintiffs'] title and constitutes

slander of title." (Compl. ¶ 94.) A slander-of-title action requires a showing of "falsity, malice, and special damages, *i.e.*, that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *B&B Inv. Group v. Gitler*, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998). Plaintiffs' complaint alleges none of the foregoing. Thus, Plaintiffs' slander-of-title claim will be dismissed for failure to state a claim.

### J. Count Ten - Slander of Credit

Count Ten of the complaint is entitled "slander of credit." Plaintiffs allege in Count Ten that Mortgage Defendants have impaired their credit. Mortgage Defendants argue that "slander of credit" is not a valid claim. Plaintiffs have not identified any authority for their claim, and the Court is not aware of any authority for such a cause of action; thus, Plaintiffs' claim in Count Ten will be dismissed for failure to state a claim.

### K. Count Eleven - Michigan Consumer Protection Act

Plaintiffs allege that Defendants have engaged in a "pattern of unfair practices" in violation of the Michigan Consumer Protection Act (MCPA), Mich. Comp. Laws § 445.901 *et seq*. However, the MCPA does not apply to claims arising out of residential mortgage loan transactions, because such transactions are generally exempt from the MCPA.[4] *Newton v. West*, 686 N.W.2d 491, 495 (Mich. Ct. App. 2004). Mortgage Defendants contend that

---

[4]Plaintiffs have not contended that any exceptions to this exemption apply. *See* Mich. Comp. Laws § 445.904(2).

Plaintiffs' claims in the instant case arise out of a residential mortgage loan transaction and Plaintiffs have not disputed this contention or offered any evidence to raise a genuine issue of material fact on this issue. Thus, the Court will grant summary judgment in favor of Mortgage Defendants and Defendants Crosstown and Transnation with respect to Count Eleven.

**L.  Count Twelve - Intentional Infliction of Emotional Distress**

To prevail on a claim of intentional infliction of emotional distress, Plaintiffs must show evidence of:

> (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff . . . . "'Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"

*Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004) (quoting *Lewis v. LeGrow*, 258 Mich. App. 175, 196, 670 N.W.2d 675 (2003)). None of the facts alleged in the complaint suggest any extreme or outrageous conduct on the part of Defendants. Moreover, actions taken to foreclose on a mortgage generally do not rise to the level of extreme and outrageous conduct. *See Ursery v. Option One Mortgage Corp.*, No. 271560, 2007 WL 2192657, at *16 (Mich. Ct. App. July 31, 2007) ("Here, the essence of Ursery's argument is that Option One breached contracts with him in various ways and foreclosed on his property. This type of activity does not rise to the level of conduct necessary to satisfy the standard [for extreme and

16

outrageous conduct] in Michigan case law."). Thus, Plaintiffs' claim of intentional infliction of emotional distress will be dismissed for failure to state a claim.

For the foregoing reasons, the Court will grant Defendants' motions to dismiss and/or for summary judgment in part and deny them in part.


Dated: November 9, 2009                                         /s/ Robert Holmes Bell
                                                                ROBERT HOLMES BELL
                                                                UNITED STATES DISTRICT JUDGE